UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Corey Rae Willis, | Case No. 2:22-cv-01154-CDS-BNW |
| Plaintiff | **Order Granting Defendants' Motion for Summary Judgment** |
| v. | |
| John "Bob" Faulkner, et al., | [ECF No. 57] |
| Defendants | |

Plaintiff Corey R. Willis brings this civil-rights action under 42 U.S.C. § 1983, alleging a deliberate medical indifference claim in violation of his Eighth Amendment rights. *See* First am. compl., ECF No. 5. Defendants Dr. Gregory K. Bryan[1] and John "Bob" Faulkner move for summary judgment. Mot. summ. j., ECF No. 57. This motion is fully briefed. *See* Resp., ECF No. 64; Reply, ECF No. 65. I assume without deciding that Willis properly exhausted his claims under the Prison Litigation Reform Act (PLRA). But because the defendants have established that they are entitled to qualified immunity, I grant summary judgment in their favor on that basis and close this case.

I.   **Background**[2]

   **A. Willis's allegations**

In 2019, Willis began experiencing health issues while incarcerated in the High Desert State Prison (HDSP) and Southern Desert Correction Center (SDCC). *See* ECF No. 5 at 1, ¶¶ 3, 4. Willis filed a medical kite to the HDSP medical department concerning these issues and was placed in the database for a provider appointment. *Id.* at 3, ¶ 4. During his appointment, Dr.

---

[1] I note that the defendants were named in the complaint as "Dr. Bryant" and "Bob Falkner." Having reviewed the pending motion and filings, the defendants correct full names are Gregory K. Bryan and John Faulkner. As such, the Clerk of the Court will be directed to correct the defendants' names on the docket.

[2] Unless otherwise noted, the court only cites to Willis's first amended complaint (ECF No. 5) to provide context to this action, not to indicate a finding of fact.

Bryan drew his blood and performed an exam. *Id.* Dr. Bryan then prescribed medication (tamsulosin) to Willis. *Id.* However, as alleged, Willis was never called back to HDSP medical nor given an explanation of his test results. *Id.*

In April 2021, Willis allegedly sent multiple kites to HDSP medical to obtain a refill for his tamsulosin, yet he never received an answer to his medical kites or a refill for his medication. *Id.* Willis alleges that neither Faulkner nor Dr. Bryan ordered his medications from the pharmacy. *Id.* at 3–4.

On May 4, 2021, Willis was transferred to a rural camp, not a medical camp. *Id.* at 4. Willis asserts that Keith Dillion's duty was to approve the transfers and make sure that all medical needs could be accommodated by the camp, and that he should have been sent to SCC or TLVCC. *Id.* As alleged, Willis did not receive his prostate medication for more than four months. *Id.* During his time at Pioche Conservation Camp (PCC), he sent multiple medical kites to receive his medication but was unable to see a doctor or go to the infirmary. *Id.*[3] Willis alleges that he never received any answer on his medical kites, nor did he receive his medication. *Id.* But in response to his inquiries, he was told that his kites and requests were forwarded to HDSP medical or the Ely State Prison (ESP) medical. *Id.* at 5.

On August 4, 2021, Willis was transferred from PCC to ESP, and the intake doctor at ESP supplied Willis with his prostate medication the following day. *Id.* As alleged, as a result of not receiving his medication, Willis developed additional symptoms which included urinating approximately twenty-five to thirty times a day. *Id.*

On September 2, 2021, Willis sent a kite to SDCC medical department to see a doctor. *Id.* Thereafter, Willis saw Dr. Omendac, who ordered blood tests and another prostate exam. *Id.* As

---

[3] The record is devoid of any medical kites being filed related to his underlying claims during the May 4, 2021 to August 4, 2021 timeframe, but there was a medical kite filed on August 5, 2021 related to his Keep-on-Person (KOP) medication and "IBUs." *See* Medical kites, Defs.' Ex. G, ECF No. 59-2 at 1–7 (sealed). KOPs are defined as medications inmates are allowed to self-administer. *See* Medical directive 508, Defs.' Ex. E, ECF No. 57-5 at 3. The court interprets "IBU" to mean ibuprofen. *See Richards v. Hutchings*, 2024 U.S. Dist. LEXIS 7550, at *5 n.5 (D. Nev. Jan. 16, 2024).

a result, the doctor doubled his tamsulosin and prescribed another medication, finasteride. *Id.* Willis was also ordered to see an outside specialist to assist in diagnosing his medical issue and working towards a resolution. *Id.* at 5–6.

Willis had an appointment scheduled for May 25, 2022, to see his specialist, but he was not transported until July 6, 2022. *Id.* at 6. At the time of filing his suit, Willis had not received the results from this medical visit, nor had he received a response to an additional medical kite he submitted. *Id.*

### B. Medical and grievance history

In 2019, Dr. Bryan saw Willis at the HDSP medical regarding his issues urinating. *See* Excerpted Progress Note and Physician's order, Defs.' Ex. F, ECF No. 59-1 at 2–3 (sealed). Dr. Bryan ordered a 180-day prescription for Flomax .4 mg. *Id.* at 3.

On April 26, 2021, Willis sent a kite to HDSP medical for a refill on this prescription. *See* Excerpted Medical Kites, Defs.' Ex. G, ECF No. 59-2 at 5 (sealed). On April 27, 2021, an individual responded to the request that the medication was refilled. *Id.* On August 5, 2021, Willis sent a kite regarding his refill for tamsulosin and ibuprofen, asserting that he had not received the medication for three months. *Id.* at 2. On August 10, 2021, a nurse practitioner ordered his tamsulosin, but noted that the prescription for ibuprofen expired. *Id.*

Between January 1, 2021, and December 31, 2021, the NDOC central pharmacy filled orders for Willis's tamsulosin medication. *See* Drug utilization report, Defs.' Ex. H, ECF No. 59-3 at 1–2 (sealed). Willis's medication was filled on: February 18, 2021; April 9, 2021; May 18, 2021; August 11, 2021; September 13, 2021; October 22, 2021; November 22, 2021; and December 20, 2021. *Id.* Further, around June of 2021, another refill was ordered and received from the pharmacy. *See* KOP log, Defs.' Ex. I, ECF No. 59-4 at 2 (sealed). A nurse signed for this medication on June 12, 2021, though the medical record is unclear if Willis received this medication when he was transferred to PCC on June 2, 2021. Defs.' Ex. A, ECF No. 57-1 at 4.

On January 31, 2022, Willis submitted an informal grievance regarding his prostate issue (2006-31-34644).[4] *See* Grievance, Defs.' Ex. J, ECF No. 57-10 at 3; Grievance History, Defs.' Ex. K, ECF No. 57-11 at 6; Inmate Grievance, Pl.'s Ex. 8, ECF No. 64-3. His informal grievance explained, "[t]his place has tried to mask the issue by giving me pills to try and fix my urinary issues. The pills are not working all that good." Defs.' Ex. J, ECF No. 57-10 at 4 (citation modified). Willis further wrote in his informal grievance that a doctor came down and ordered him more pills. *Id.* at 5. Willis's request was to see an outside doctor to complete a CT scan or ultrasound. *Id.*

According to the inmate grievance report, on March 14, 2022, Willis's informal grievance was granted, with the official response stating, "I will have you see Symour Omandac regarding your medical concerns. Last time you saw him he wanted to see you again in 2 months for follow up and that is just exactly about time to see him again. Will do what we can to help you out." *Id.* at 2; Pl.'s Ex. 8, ECF No. 64-3 at 24.

On April 2, 2022, Willis filed a first level grievance, asserting that he filed an "informal grievance on [February 1, 2022] and had not received a response back [within sixty days]." *See id.* In this first level grievance, Willis asserted that Dr. Omandac has done what he can in trying to get Willis to see an outside urologist for an MRA or CT scan. Defs.' Ex. J, ECF No. 57-10 at 8–9. Willis further explained that he went three months without "Kops" due to the caseworker sending him to a rural camp, and when he returned, his medication no longer worked. *Id.* at 9. Willis again requested to see an outside provider. *Id.*

On February 9, 2023, NDOC issued a "1st Rejection, Level 1" to Willis's attempted first level grievance. *See id.* at 6; Defs.' Ex. K, ECF No. 57-11 at 6. His grievance was rejected as an informal receipt, and the SDCC coordinator cited AR 740.08(5), asserting that all "documentation and factual allegations available to the inmate needed to be submitted at this

---

[4] According to the grievance history and the parties' argument, there was only one grievance (2006-31-34644) submitted pertaining to this suit.

4

level with the grievance." Defs.' Ex. J, ECF No. 57-10 at 6. And "this claim was granted at the informal level and cannot be resubmitted." *Id.*

### C. Willis's initiated action

Willis initiated this action on July 19, 2022. *See* Compl., ECF No. 1-1. After screening Willis's complaint, the original complaint was dismissed without prejudice, but he was granted leave to amend his Eighth Amendment claim. Willis filed an amended complaint. *See* Order, ECF No. 3; ECF No. 5. In his amended complaint, he sued Dr. Bryan (then prescribing physician) and Bob Faulkner (director of nursing) for medical deliberate indifference that took place while he was incarcerated at HDSP and SDCC. The defendants then filed the pending summary judgment motion.

## II.     Legal standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmovant, indicates "no genuine dispute as to any material fact" and that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit" based on the governing law, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "mere disagreement or the bald assertion that a genuine issue of material fact exists" is not enough to defeat summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

Because the plaintiffs bear the burden of proof at trial, a moving defendant need only point to an absence of evidence on an element of the plaintiffs' case. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250–51. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d

5

989, 992 (9th Cir. 2018); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

III. Discussion

The defendants argue that summary judgment should be granted for the following reasons: (1) the defendants are entitled to qualified immunity on all claims; (2) the plaintiff's claims are barred by the PLRA; and (3) Willis is not entitled to punitive damages. *See* ECF No. 57.[5] I agree in part. I first address whether the defendants are entitled to qualified immunity.

A. **The defendants enjoy qualified immunity from Willis's claims because he has not shown that their conduct violated a clearly established right.**

Qualified immunity shields government officials "from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "A government official's conduct violates clearly established law when, at the time of the challenged conduct, the contour of a right [is] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* at 741 (cleaned up). The burden of showing that the right at issue was clearly established at the time of the incident falls on the plaintiff. *See Robinson v. York*, 566 F.3d 817, 826 (9th Cir. 2009).

"If the law did not put the [government actor] on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). The central dispositive inquiry for finding a right "clearly established" is "whether it would be clear to a reasonable [government actor] that his conduct was unlawful in the situation he confronted." *See id.*

---

[5] Because I grant the motion based on the defendants' qualified immunity, I do not address the merits of the PLRA and punitive damages arguments. Further, because I find that Willis's claim is barred because of qualified immunity, there is no basis for an award of punitive damages.

6

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Hamby v. Hammond*, 821 F.3d 1085, 1090 (9th Cir. 2016) (quoting *Taylor v. Barkes*, 575 U.S. 822, 825 (2015)). A defendant is entitled to qualified immunity when no precedent squarely governs the facts, meaning that the court cannot say that only someone plainly incompetent or who knowingly violates the law would have acted as the official did. *Hamby*, 821 F.3d at 1091. The Ninth Circuit recently held that "the 'contours' of right must be 'sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *DeFrancesco v. Robbins*, 136 F. 4th 933, 939 (9th Cir. 2025) (citations omitted). The defendants assert that they are entitled to qualified immunity because there was no case law that would put them on clear notice that their actions violated Willis's constitutional rights. ECF No. 57 at 12. Moreover, the defendants argue that there is no evidence that the defendants directly participated in deliberately delaying any renewal, refill, or delivery of Willis's tamsulosin medication from April through August 2021. *Id.* at 14. In support of their qualified immunity argument, the defendants assert that Faulkner was transferred to SDCC from HDSP on August 5, 2020, and did not facilitate any patient care at HDSP in 2021. *Id.*; Faulkner decl., Defs.' Ex. C, ECF No. 57-3 at 2. Further, Dr. Bryan retired a few days after Willis was transferred. *See id.*; Bryan decl., Defs.' Ex. B, ECF No. 57-2 at 2–4.

In opposition, Willis argues that whether the defendants were obligated to intervene is a fact issue and because the defendants had a supervisory role, they were required to ensure continuity of care during transfers. ECF No. 64 at 11.[6] To support his position, the plaintiff asserts that qualified immunity is inappropriate where a supervisor should have known about ongoing constitutional violations under their watch. *Id.* at 12–13 (citing *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012)). I find Willis's argument unpersuasive. At best, even when viewing this in the light most favorable to the plaintiff, this only supports a general assertion

---

[6] Willis cites to NDOC Medical Directive 508.02(1), which states, "[w]hen inmates are transferred from one institution to another, their KOP medications should accompany them." Defs.' Ex. E, ECF No. 57-5 at 4.

that doctors and directors of nursing have supervising roles. But it does not show that a genuine issue of material fact exists as to a medical indifference claim.

Willis further argues in opposition that the defendants failed to ensure that Willis received the medication he needed, despite their knowledge of his condition and repeated notices of his suffering. ECF No. 64 at 3. Willis further argues that NDOC documented multiple pharmacy fills but failed to deliver those medications. Willis asserts that Dr. Bryan and Bob Faulkner failed to take steps to correct the "breakdown in treatment." *Id.*

In essence, Willis's argument for establishing a medical indifference claim under the Eighth Amendment is that the defendants "deliberate inaction and systemic disregard for established policy allowed a known medical condition to go untreated for months." *Id.* at 3. Willis asserts that he submitted kites and a first level grievance that expressly stated he went three months without KOPs. *Id.* at 11; Pl.'s Ex. 2, ECF No. 64-3; Pl.'s Ex. 8, ECF No. 64-3. Willis also argues that Dr. Bryan, as his treating physician, was obligated to ensure the prescription was followed, not to blindly rely on subordinates. ECF No. 64 at 12. Further, he asserts that whether the defendants' failure to ensure the medication was forwarded constituted deliberate indifference must be resolved by a jury—not summarily dismissed. *Id.* at 13. While I am empathetic to Willis, and concerned with his medical condition, I disagree with his arguments here.

Willis's primary claim for medical indifference is based on medication not being given to him when he was transferred to PCC. This argument fails for two reasons. First, the medical records indicate that refills of drugs were filled. Second, Willis has not established which medication was not filled to raise a genuine disputed issue of material fact. The drug utilization report demonstrates that Willis had his prescription for tamsulosin filled on May 18, 2021, for a quantity of thirty days. *See* Defs.' Ex. H, ECF No. 59-3 at 2 (sealed). In reviewing the record, Willis was transferred to PCC on June 2, 2021, and was transferred back to ESP on August 4, 2021. *See* Pl.'s Ex. 4, ECF No. 64-3 at 13. The KOP log indicates that an individual signed out the

tamsulosin medication on June 12, 2021. *See* Defs.' Ex. I, ECF No. 59-4 at 2. While it is unclear if this medication was actually delivered to Willis, he has not established how the delivery of this medication was the defendants' direct responsibility.

As to whether the defendants were on notice of this alleged medical indifference, the record is devoid of any medical kites filed by Willis while he was at PCC. *See* Defs.' Ex. G, ECF No. 59-2 at 1–7. Even after leaving PCC, on January 31, 2022, Willis submitted an informal grievance that would have put the defendants on notice. *See generally* Defs.' Ex. J, ECF No. 57-10. But the grievance stated that the pills were not working well and included a request to see an outside provider, not renewal of medication or a lack of medication. *See id.* at 3–4. In that same informal grievance, Willis stated that "last week [a doctor] from HDSP came down and ordered [him] more pills" without talking to him. *Id.* at 5. Further, while his first level grievance briefly states that he went three months without his "kops" (*id.* at 9), he fails to establish that the defendants received notification of the informal grievances he filed, or how they could have acted upon those grievances given their positions as retired (Bryan) or not working at HDSP (Faulkner).

Willis also argues that summary judgment should not be granted because a reasonable jury could find that the defendants "knew of and disregarded Willis's serious medical needs by allowing a three-month interruption in his prescribed Tamsulosin, resulting in worsening symptoms and eventual surgical intervention" when he was transferred to PCC. ECF No. 64 at 15. But Willis's medical record history does not support his argument. Rather, the record does shows that when a medical kite was received, the medication was filled as required. *See* Defs.' Ex. G, ECF No. 59-2 at 1–7. *But see Sandoval v. Cty of San Diego*, 985 F.3d 657 (9th Cir. 2021) (holding where a nurse who made essentially **no effort** to determine why the plaintiff was suffering from his reported symptoms, abandoned the plaintiff, and failed to pass along any information to the nurses who relieved him was not entitled to qualified immunity).

1  The court does not diminish the alleged delay that occurred in Willis receiving his
2 medication. But the record does not support a finding that the defendants knew that Willis had
3 not received his medication. Moreover, a delay in medication alone does not amount to a medical
4 indifference claim succeeding at summary judgment. *See Norsworthy v. Espinoza*, 2025 U.S. Dist.
5 LEXIS 114468, at *11 (E.D. Cal. June 16, 2025) (explaining a prisoner must show that a delay
6 would cause significant harm and that the defendants should have known this to be the case).
7  The Ninth Circuit has cautioned that the sort of "clarity a plaintiff must demonstrate in
8 order to overcome a defense of qualified immunity" is high and "defining the relevant right as
9 simply the right to be free from deliberate indifference 'is far too general a proposition to control
10 this case.'" *Hamby*, 821 F.3d at 1094 (quoting *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600
11 (2015)).
12  Here, Willis acknowledges that the law must be clearly established in light of the
13 specific context of the case, not as a broad general proposition. ECF No. 64 at 16. But Willis fails
14 to support his conclusory assertion that "it has long been clearly established that failing to
15 provide prescribed medication, failing to ensure continuity of care during transfers, and ignoring
16 obvious and repeated requests for treatment violate[s] the Eighth Amendment." *Id.* at 16–17
17 (cleaned up). Because I find that the defendants have met their initial burden demonstrating the
18 absence of any genuine issue of material fact, the burden shifts to Willis to present specific facts
19 that show there to be a genuine issue of material fact. *See* Fed. R. Civ. P. 56(e); *Norsworthy*, 2025
20 U.S. Dist. LEXIS 114468, at *6. Willis fails to meet his burden.
21  The dispositive question here is whether the defendants, **on these facts**, should have
22 known that what they did violated the Eighth Amendment, and Willis has failed to point to any
23 sufficiently similar case that could suggest that the defendants here should have known. So I
24 find that the defendants are entitled to qualified immunity and grant their motion for summary
25 judgment on that basis.
26

IV.     Conclusion

IT IS HEREBY ORDERED that the defendants' motion for summary judgment [ECF No. 57] is GRANTED.

The Clerk of Court is kindly instructed to update the docket to reflect the defendants' names as Gregory K. Bryan and John "Bob" Faulkner, to enter judgment accordingly, and to close this case.

Dated: January 13, 2026

_____
Cristina D. Silva
United States District Judge

11